UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Paul Stolzenburg, Executor of the Estate of Herman Stolzenburg and Executor of the Estate of Thelma Stolzenburg<br><br>v.<br><br>Flikr LLC and Amazon.com Services, LLC | )<br>)<br>)<br>)  Docket No.<br>)<br>)<br>)<br>)<br>) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **COMPLAINT**

## **INTRODUCTION**

1.     The plaintiff brings this civil lawsuit against the defendants because his 93 year old parents were lit on fire, suffered horrifically for several days, and subsequently died, all because the designer and manufacturer of a table top fireplace device, and the seller of the device, ignored the known risk of a fatal explosion presented by the device even after two nearly identical burn incidents led to lawsuits, the judges in both lawsuits found sufficient evidence to allow the jury to award punitive damages against the designer/manufacturer, two countries issued formal recalls of the device due to the very risk that occurred here, and an Amazon.com customer posted a public review drawing attention to the explosion risk that ultimately occurred here.

**PARTIES**

2.    The plaintiff, Paul Stolzenburg, resides at 238 Beauty Hill Road in Barrington, New Hampshire 03825. He is the executor of the estate of his father, Herman Stolzenburg, and the executor of the estate of his mother, Thelma Stolzenburg.

3.    Defendant Flikr LLC is a business entity organized under the laws of the state of Georgia with a principal place of business at 233 Brickyard Road, Dalton, Georgia 30720.

4.    Defendant Amazon.com Services, LLC is a business entity organized under the laws of California with a principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109.

**JURISDICTION AND VENUE**

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, since the plaintiff and the defendants are citizens of different states; the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), excluding interest and costs; and there is complete diversity of citizenship between the plaintiff and the defendants.

6.    This Court has personal jurisdiction over the defendants because the defendants purposely and intentionally conduct business in New Hampshire and their contacts with New Hampshire are connected to this litigation, and because the defendants are subject to general jurisdiction due to

the extent and nature of their contacts in the United States.

7.    Venue is proper in the District of New Hampshire based on 28 U.S.C. §1391(b)(2).

**FACTUAL BACKGROUND**

8.    In 2010, Travis Seera decided to create a table top personal fireplace.  He had a bachelor's degree in liberal arts and no education, formal training, or experience in any scientific field pertaining to the design of such a device.

9.    In 2017, Travis Seera introduced for public sale a product he called "Burn," a small cement device that burned Isopropyl alcohol to create a table top decorative fire.

10.    When the Burn device was introduced for sale to the public, Mr. Seera had not consulted with any experts or consultants to ensure that the device and its warnings and instructions were reasonably safe.

11.    Mr. Seera personally drafted the warnings and instructions that accompanied the Burn device.  When he did so, he had no education, training, or experience in the fields of engineering, fire safety, product safety, human factors, or product warnings/instructions.

12.    The warnings and instructions that Mr. Seera drafted, which accompanied the Burn device when it was sold to a customer, included the following statement:

> When fire is first lit the flame may be invisible. This
> effect of invisible flame also occurs when the fire is
> almost out. Do not refill fireplace until fire is absolutely
> out, even snuffing to ensure it's dead.

13.     When he drafted the Burn device's warnings and instructions, Mr.

Seera reviewed the warnings and instructions that accompanied other similar

devices already in the marketplace and he copied the warning regarding

invisible flames from another manufacturer's warnings and instructions.

14.     In January of 2018, Mr. Seera created a business entity in

Tennessee called Seera Creative LLC, which thereafter manufactured and sold

the Burn device.

15.     In early 2019, Mr. Seera decided that the name "Burn" was

hindering sales so he "rebranded" the device by simply changing its name to

"Flikr."  No changes were made to the design of the device when the name

changed to Flikr and it was thereafter manufactured and sold by Seera

Creative LLC.

16.     When he rebranded the device as Flikr, Mr. Seera personally

revised the warnings and instructions that accompanied the device when it was

sold to a customer.

17.     The revised warnings and instructions that accompanied the Flikr

device deleted the statement quoted above regarding the possibility of an

invisible flame.  Therefore, the initial version of the Flikr warnings and

instructions did not advise users of the possibility of an invisible flame or flame

4

jetting when using the Flikr device.

18.    On June 8, 2019, a user of a Flikr device in Redondo Beach, California, Glynis Bogda, was badly burned when the device experienced a "sudden flash explosion" under expected use.

19.    Nine days later, on June 27, 2019, a similar incident occurred in Oceanside, California, when Laura King was badly burned after a Flikr device "exploded" under expected use.

20.    The warnings and instructions that accompanied the Flikr devices used by Ms. Bogda and Mrs. King had been revised again by Mr. Seera and they still did not mention the possibility or risk of an invisible flame.

21.    On November 15, 2019, Laura King and her husband filed a civil lawsuit in California Superior Court against Seera Creative LLC, Travis Seera, and the retailer that sold the Flikr device alleging that the device was unreasonably dangerous and defective.

22.    In 2020, sales of the Flikr device increased dramatically and it was eventually offered for sale through approximately 1,200 different retailers, including Amazon.com.

23.    On November 10, 2020, Australia imposed a recall of the Flikr device.  The public notice published by Australian authorities stated:

> The product does not comply with the requirements of the Consumer Goods (Decorative Alcohol Fuelled Devices) Safety Standard 2017.

24.     The Australian recall notice also contained the following warning:

**Hazard**: The flame from a decorative alcohol burner may not be visible when lit. If the user refills the burner while lit there is a risk of an uncontrolled flame burst causing serious burns.

25.     The Australian recall notice stated "Consumers must immediately cease use" of the Flikr fireplace and contact the seller to return the product and obtain a full refund.

26.     The Australian recall notice[1] and a separate recall advertisement[2] both remain posted on the Internet.

27.     On December 30, 2020, Ms. Bogda filed a civil lawsuit against Seera Creative LLC and the retailer that sold the device alleging that the Flikr Fireplace was unreasonably dangerous and defective.

28.     On October 27, 2021, an Amazon.com customer identified as "AF" posted a public review on Amazon.com's Flikr sales page which stated: "I wanted to love but too dangerous" and added, "In theory this thing is super cool.  But I found it to be too scary and dangerous with the flame following liquid and potential splashing, etc."

---

[1] https://www.productsafety.gov.au/recalls/the-gentlemans-trading-company-pty-ltd-%E2%80%94-fl%C3%AEkr-mini-fireplace (visited on 10/14/2024)

[2] https://www.productsafety.gov.au/system/files/recall/Recall%20advertisement_1452.pdf (visited 10/14/2024).

29.    On January 18, 2022, the then-president of Seera Creative LLC

was deposed in the Laura King litigation and she testified that approximately

400,000 units of the Flikr fireplace had been sold and that Flikr's were being

distributed at that point by approximately 1,200 different retailers.

30.    On July 8, 2022, the trial judge in the Laura King litigation issued

an order stating, in part, as follows:

> [T]he court finds, at a minimum, triable issues of
> material fact as to whether Defendant and/or Mr.
> [Travis] Seera acted with a willful and conscious
> disregard for the rights and safeties of consumers
> and/or intended to cause injury to consumers in
> allowing the FLIKR fireplace to go to market including:
> (1) whether Mr. Seera engaged in adequate evaluation/
> testing/vetting of the FLIKR fireplace before bringing it
> to market; (2) why Defendant/Mr. Seera modified the
> instructions/warnings when they rebranded the FLIKR
> fireplace; and (3) whether and why Defendant/Mr. Seera
> did/did not obtain independent confirmation as to whether
> the updated instructions/warnings accompanying the
> FLIKR fireplace were sufficient for safety purposes.

31.    On October 18, 2022, a different judge presiding over the Glynis

Bogda litigation denied the defendants' request to strike the plaintiff's claim for

punitive damages (under California law) and denied the defendants' request to

exclude from trial evidence of the Laura King incident, which the judge

described as follows:

> Plaintiff further alleges that in an almost identical
> case, Laura King sustained serious burn injuries
> on June 27, 2019, when her FLIKR exploded after
> her husband Wade went to refill the fireplace with
> 70% isopropyl alcohol after a first burn appeared

7

to have ended. Following the instructions, both Wade and Laura checked the fireplace for any lingering flame before attempting the refill. No flame was visible, and the burn chamber appeared to be dry. The cause of the explosion was an imperceptible flame that turned into a huge fireball as soon as Wade added the alcohol to the fireplace.

32.    The very next day, October 19, 2022, a new business entity named Flikr LLC was created in Georgia.  Travis Seera is not listed as an organizer of the new entity, but his brother Tyler, is listed as an organizer, albeit with an alternative spelling of his last name - Siira.

33.    Seera Creative LLC was dissolved as a business entity in Tennessee on December 2, 2022.

34.    In the meantime, on December 1, 2022, an Amazon.com customer identified as "ATXPrincey" posted a public review on Amazon.com's Flikr sales page which stated: "DO NOT USE THIS PRODUCT – FIRE HAZARD."  It then stated:  "To anyone considering using this product, be aware you may be injured or seriously burned. It was gifted to my wife and upon the attempt to light the device, a flash fire erupted that almost burned down my house and seriously burned two close friends who had to go to the ER. Save yourself from being a victim.  Tell your friends.  This product is a FIRE HAZARD."

8

35.    On September 28, 2023, Canada issued a recall of Flikr's round

and square personal fireplaces.  The recall notice posted to the Internet[3] stated:

> The recalled products do not meet the labelling
> requirements for consumer container products
> sold with the intention of being filled with a
> hazardous chemical product, as required by the
> Consumer Chemicals and Containers Regulations,
> 2001, under the Canada Consumer Product Safety
> Act.

36.    According to the Canadian recall notice,

> The portable firepots also do not have the required
> labelling according to the ASTM F3363-19 Standard
> Specification for Unvented Liquid/Gel Fuel-Burning
> Portable Devices.  These labelling requirements are
> necessary to inform consumers about fire or burn
> hazards, including flame jetting.  Flame jetting occurs
> when fuel vapours around a poured fuel stream ignite
> when a user refuels a portable fire product that is still
> burning and a flame is not readily visible.  This can
> result in a burst of flaming fuel being rapidly expelled
> out of the container and travelling a distance dangerous
> to the user and bystanders. Flame jetting occurs very
> quickly, so the user and/or bystanders are unable to
> react quickly enough to move away from an incoming
> flame jet.

37.    The Canadian recall notice recounted that, "[a]s of September 22,

2023, the company has received 1 report of flame jetting in Canada resulting in

burn injuries."  It expressly warned that:

> The lack of appropriate labelling and hazard information
> could contribute to a flame jetting incident and/or

---

[3] https://recalls-rappels.canada.ca/en/alert-recall/flikrfire-personal-firepots-recalled-due-lack-appropriate-labelling-and-hazard (visited on 10/14/2024).

unintentional exposure to the produce and lead to
serious illness, injury or death.

38.    Following the two California lawsuits and the two recalls, Travis
Seera created a new set of warnings and instructions to accompany the Flikr
Fire Personal Fireplace.  The new set of warnings and instructions still did not
advice users of the possibility of an invisible flame or flame jetting when using
the Flikr device.

39.    On April 7, 2024, Yvette Dexter ordered a Flikr Fire Personal
Concrete Fireplace from Amazon.com.

40.    On April 12, 2024, the Flikr Fire Personal Fireplace ordered by
Mrs. Dexter was shipped from Amazon.com for delivery to Mrs. Dexter's home
in Winchester, Virginia.

41.    On April 13, 2024, the Flikr Fire Personal Fireplace ordered by
Mrs. Dexter was delivered by Amazon.com to her residence in Winchester,
Virginia.

42.    When the Dexters received the Flikr Fire Personal Fireplace from
Amazon.com, the warnings and instructions that accompanied it did not advise
users of the possibility of an invisible flame or flame jetting when using the
Flikr device.

43.    Yvette Dexter and her husband delivered the Flikr Fire Personal
Fireplace to their friend, Diane McEneaney, at her residence at 8 Gold Post
Road in Dover, New Hampshire on either April 25, 2024 or April 26, 2024.

44.    The Dexters presented the Flikr Fire Personal Fireplace to Ms. McEneaney as a gift.

45.    The Dexters, who owned a Flikr Fireplace of their own, showed Ms. McEneaney how to fill it with Isopropyl alcohol, which they supplied with the device, how to light it, and how to extinguish the flame.

46.    No warnings, instructions, or labels that accompanied the Flikr Fire Personal Fireplace that the Dexters gifted to Dee McNeaney on April 25, 2024 or April 26, 2024 advised users of the possibility of an invisible flame or flame jetting when using the Flikr device.

47.    After receiving the gift and after the Dexters returned to Virginia, Ms. McEneaney filled, lit, and extinguished the Flikr Fireplace on many occasions without any problems, incidents, or concerns.

48.    On Father's Day, June 16, 2024, Ms. McEneaney invited her parents, Herman and Thelma Stolzenburg, to her home at 8 Gold Post Road in Dover, New Hampshire to celebrate the holiday.

49.    Thelma Pierce and Herman Stolzenburg had been born within two months of each other in 1931.  They met in their first grade classroom and were classmates through high school.  Both were members of the school band, Herman on drums and Thelma on the clarinet.  Herman played basketball and Thelma was a cheerleader.  They married in 1953 and had three children.

50.    Herman was drafted into the United States Navy, and ended up having a 21-year career, alternating stints as a submarine crewman and then a Navy recruiter.  In 1968, the family finally put down roots in Dover, New Hampshire.  Herman became Chief of the Boat aboard the USS Albacore, a submarine designed to dodge enemy warships, while Thelma worked as an administrative assistant at the University of New Hampshire.

51.    By the 1990s, Herman had left the Navy and earned a college degree in business at the age of 56.  Then, both Herman and Thelma transitioned to a life of volunteer service with Thelma comforting seniors-in-need at a local assisted living facility while Herman crusaded for homeless dogs at the Cocheco Valley Humane Society.  His legendary contributions to the rescue center included roles as dog walker, food runner, foster parent, fundraiser, cruelty investigator/victim rescuer, board chairman, schoolroom storyteller, and adoptive parent to some of the shelter's most disadvantaged dogs.  In early 2024, at the age of 93, Herman was still making weekly trips to the Cocheco Valley shelter, reading stories to soothe the lonely dogs.

52.    Herman's volunteer work for his fellow human citizens is equally legendary, from city beautification projects to school reading programs to environmental campaigns. After the USS Albacore was decommissioned and put on display in Portsmouth, former Chief of the Boat Stolzenburg would give impromptu tours to visitors. And shortly after the September 11, 2001 attack

in New York City, Herman traveled to ground zero with a therapy dog, providing comfort for first responders. For a period of time, he volunteered weekly at the Strafford County Correctional Facility, greeting families coming to visit their incarcerated loved ones.  These, among many other displays of Herman's generosity and sense of service, led to his selection in 2008 as Dover's Citizen of the Year.

53.    Herman and Thelma had known each other for 88 years and been married for 71 years when they visited their daughter, Dee, on Father's Day of 2024.



**Herman and Thelma Stolzenburg**

13

54.    As Thelma, Herman, and Dee sat together on the outside porch of Dee's home, the Flikr Fire Fireplace was located on the small table between them.  Dee lit the device with a long handled lighter.

55.    After a period of time, the flame on the device appeared to extinguish on its own.  Dee looked down into the cylinder of the device and did not see any remaining flame.

56.    Dee was unaware of the possibility of an invisible flame or flame jetting with respect to her use of the Flikr Fire Personal Fireplace.

57.    Having confirmed to herself that there was no remaining flame, Dee retrieved the bottle of Isopropyl alcohol and began to pour fuel from the bottle into the cylinder of the Flikr Fireplace.

58.    As Dee poured Isopropyl alcohol into the Flikr device, a massive flame erupted from the device, enveloping both her parents as they sat at the table where the device was located.

59.    Both Herman and Thelma were immediately lit on fire from the flames that erupted from the Flikr device.  Dee yelled for help and did her best to put out the flames that were burning her parents.

60.    A neighbor called 911 at 3:43 p.m. and reported the emergency. Other neighbors came to the location of the incident and rendered aid as best they could.  First responders eventually arrived and took Herman and Thelma to the hospital, where they were treated for extensive and severe burns.

14

61.     Thelma passed away from her burns on June 22, 2024 at

Massachusetts General Hospital and Herman passed away on June 25, 2024

at a Dover hospice center from his burns.

62.     On July 24, 2024, the United States Consumer Product Safety

Commission issued a 74 page Decision and Order in The Matter of

Amazon.com, Inc., CPSC Docket No. 21-2.[4]  The U.S. CPSC rejected

Amazon.com's contention that it is not a distributor of the products it sells

though its website and instead concluded that:

> Amazon fit squarely within the definition of
> distributor in the [Consumer Product Safety
> Act] when it operated its Fulfilled by Amazon
> program . . .  The substantial record before us
> establishes Amazon's extensive control over
> these products, beginning with receipt of a
> Fulfilled by Amazon participant's products at
> an Amazon distribution center, and storage of
> this inventory until it is purchased by and
> shipped to a consumer.  Amazon's argument
> that it is merely a 'third-party logistics provider'
> misrepresents the far-reaching control Amazon
> exercises in its Fulfilled by Amazon program.

Decision and Order at 26-27.

_____

[4] The plaintiff incorporates by reference the entire CPSC order, which is posted on the
Internet at https://www.cpsc.gov/s3fs-public/pdfs/recall/lawsuits/abc/142%20-
%20In%20the%20Matter%20of%20Amazon.com%20Inc.%20Decision%20and%20Order.pdf.
(visited on 10/14/2024).  This includes the evidence detailed in the order, along with the
Commission's factual findings, and conclusions of law.

63.    In support of its conclusion, the Commission noted that "some courts have found Amazon liable under state and common law strict product liability principles because of its Fulfilled by Amazon program activities." Id. at 31, fn. 26 (citations omitted).  Then, reviewing the evidentiary record, which included sworn admissions by Amazon executives, the Commission summarized the pertinent facts that supported its conclusion as follows:

> Amazon charges customers, processes their payments, and then pays program participants after deducting its own Fulfilled by Amazon program fees.  Amazon controls the entire sale process, from the initial listing on Amazon.com, through ordering and delivery, to product returns, disposition of returned products, and the processing of refunds or Amazon credits.

Id. at 35.

## COUNT I
### (Strict Liability - Flikr LLC)

64.    The plaintiff incorporates by reference each of the foregoing paragraphs.

65.    At all times relevant, defendant Flikr LLC was engaged in the business of designing, manufacturing, and selling Flikr Fire Fireplaces, including the one that caused the Stolzenburgs' burn injuries and subsequent deaths.

66.    Defendant Flikr LLC designed, manufactured, and sold the Flikr Fire Fireplace that caused the Stolzenburgs' injuries and deaths.

16

67.    The Flikr Fire Fireplace was sold in a defective and unreasonably dangerous condition in that it was capable of creating unexpected flame-jetting likely to seriously harm a user or innocent bystander under foreseeable use.

68.    Dee McEneaney and the Stolzenburgs were foreseeble users of the Flikr Fire Fireplace and the manner in which they used it was foreseeable to the defendant.

69.    As a direct and proximate result of the defective and unreasonably dangerous condition of the Flikr Fire Fireplace sold to the Dexters and gifted to Ms. McEneaney, the device unexpectedly created flame-jetting which caused serious harm to the Stolzenburgs, and their subsequent deaths, under foreseeable use.

70.    As a further result, Mr. and Mrs. Stolzenburg suffered extreme physical pain and emotional distress, they experienced a loss of enjoyment of life, and they incurred extraordinary medical expenses and funeral costs.

71.    Wherefore, the plaintiff demands judgment against Flikr LLC in an amount sufficient to compensate the Stolzenburgs' estates for the foregoing injuries and losses, together with interest and costs.

## COUNT II
### (Negligence - Flikr LLC)

72.    The plaintiff incorporates by reference each of the foregoing paragraphs.

73.    Flikr LLC had a duty to use reasonable care in designing and manufacturing the Flikr Fire Fireplace to avoid distributing and selling it in an unreasonably dangerous condition.

74.    Flikr LLC breached this duty by selling the Flikr Fire Fireplace when it knew or should have known that it was in a defective and unreasonably dangerous condition in that it was capable of creating unexpected flame-jetting likely to seriously harm a user or innocent bystander under foreseeable use, and when it otherwise failed to comply with the applicable standards for safe design, instructions, and warnings intended to prevent harm to those using the fireplace in a foreseeable manner.

75.    Dee McEneaney and the Stolzenburgs were foreseeble users of the Flikr Fire Fireplace and the manner in which they used it was foreseeable to the defendant.

76.    As a direct and proximate result of the defendant's breach, the Flikr Fireplace unexpectedly created flame-jetting which caused serious harm to the Stolzenburgs, and their subsequent deaths, under foreseeable use.

77.    As a further result, Mr. and Mrs. Stolzenburg suffered extreme physical pain and emotional distress, they experienced a loss of enjoyment of life, and they incurred extraordinary medical expenses and funeral costs.

78.    Wherefore, the plaintiff demands judgment against Flikr LLC in an amount sufficient to compensate the Stolzenburgs' estates for the foregoing injuries and losses, together with interest and costs.

## COUNT III
### (Strict Liability - Amazon.com Services, LLC)

79.    The plaintiff incorporates by reference each of the foregoing paragraphs.

80.    At all times relevant, defendant Amazon.com Services, LLC was engaged in the business of selling and distributing Flikr Fire Fireplaces, including the one that caused the Stolzenburgs' injuries and deaths.

81.    Defendant Amazon.com Services, LLC sold and distributed the Flikr Fire Fireplace that caused the Stolzenburgs' injuries and deaths.

82.    The Flikr Fire Fireplace was sold in a defective and unreasonably dangerous condition in that it was capable of creating unexpected flame-jetting likely to seriously harm a user or innocent bystander under foreseeable use.

83.    Dee McEneaney and the Stolzenburgs were foreseeble users of the Flikr Fire Fireplace and the manner in which they used it was foreseeable to the defendant.

84.    As a direct and proximate result of the defective and unreasonably dangerous condition of the Flikr Fire Fireplace sold to the Dexters and gifted to Ms. McEneaney, the device unexpectedly created flame-jetting which caused

serious harm to the Stolzenburgs, and their subsequent deaths, under foreseeable use.

85.     As a further result, Mr. and Mrs. Stolzenburg suffered extreme physical pain and emotional distress, they experienced a loss of enjoyment of life, and they incurred extraordinary medical expenses and funeral costs.

86.     Wherefore, the plaintiff demands judgment against Amazon.com Services, LLC in an amount sufficient to compensate the Stolzenburgs' estates for the foregoing injuries and losses, together with interest and costs.

## COUNT IV
## (Negligence - Amazon.com Services, LLC)

87.     The plaintiff incorporates by reference each of the foregoing paragraphs.

88.     Amazon.com Services, LLC had a duty to use reasonable care to avoid distributing and selling the Flikr Fire Fireplace in an unreasonably dangerous condition.

89.     Amazon.com Services, LLC breached this duty by selling or distributing the Flikr Fire Fireplace when it knew or should have known that it was in an unreasonably dangerous condition in that it was capable of creating unexpected flame-jetting likely to seriously harm a user or innocent bystander under foreseeable use, and when it knew or should have known that the device failed to comply with the applicable standards for safe design, instructions, and

warnings intended to prevent harm to those using the fireplace in a foreseeable manner.

90.    Dee McEneaney and the Stolzenburgs were foreseeble users of the Flikr Fire Fireplace and the manner in which they used it was foreseeable to the defendant.

91.    As a direct and proximate result of the defendant's breach, the Flikr Fireplace unexpectedly created flame-jetting which caused serious harm to the Stolzenburgs, and their subsequent deaths, under foreseeable use.

92.    As a further result, Mr. and Mrs. Stolzenburg suffered extreme physical pain and emotional distress, they experienced a loss of enjoyment of life, and they incurred extraordinary medical expenses and funeral costs.

93.    Wherefore, the plaintiff demands judgment against Amazon.com Services, LLC in an amount sufficient to compensate the Stolzenburgs' estates for the foregoing injuries and losses, together with interest and costs.

## ADDITIONAL PRAYER FOR RELIEF

94.    To the extent that the misconduct of either defendant rises to the level of wanton or reckless, the plaintiff seeks an award of enhanced compensatory damages for the added harm suffered by the plaintiff and the decedents, as well as attorneys' fees.

95.    Evidence supporting a finding of wanton or reckless misconduct on the part of Flikr LLC includes the evidence relied upon by the California trial judges in the King and Bogda cases when they permitted the issue of punitive damages to go to the jury in each case and the fact that, when they sold and distributed the Flikr Fire Fireplace that caused the Stolzenburgs' death, Flikr LLC had actual knowledge of the risk of serious harm caused by invisible flames and flame-jetting, it had actual knowledge that the Flikr device had caused serious burns to multiple users or bystanders due to flame-jetting, and it had actual knowledge that the device had been recalled in Australia and Canada due to the danger of harm from invisible flames and flame-jetting.

96.    Similarly, evidence of Amazon.com's wanton or reckless misconduct includes the existence of the two public lawsuits, the two published court orders permitting the issue of punitive damages to go to the jury in the King and Bogda cases, the two public recalls, and the December 1, 2022 review posted on Amazon.com's Flikr sales page, which together establish that, when it sold or distributed the Flikr Fireplace to the Dexters, Amazon.com either had actual knowledge of the risk of serious harm caused by invisible flames and flame-jetting with respect to the Flikr device, it had actual knowledge that the Flikr device had caused serious burns to multiple users or bystanders due to flame-jetting, and it had actual knowledge that the Flikr device had been recalled in Australia and Canada due to the danger of harm

from invisible flames and flame-jetting, or, if it did not have actual knowledge of these things, Amazon.com recklessly failed to discover the risk of serious harm caused by invisible flames and flame-jetting with respect to the Flikr device, that the Flikr device had caused serious burns to multiple users or bystanders due to flame-jetting, and that the device had been recalled in Australia and Canada due to the danger of harm from invisible flames and flame-jetting.

## JURY TRIAL DEMAND

97.    The plaintiff hereby demands a jury trial on all of the foregoing counts.

Respectfully submitted:

Paul Stolzenburg, Executor of the Estate of Herman Stolzenburg and Executor of the Estate of Thelma Stolzenburg

By His Attorneys:

ABRAMSON, BROWN & DUGAN

DATED: October 15, 2024          By:   /s/ Mark A. Abramson
Mark A. Abramson, Esquire
NHBA No. 155
1819 Elm Street
Manchester, NH 03014
(603) 627-1819
mabramson@arbd.com

DATED: October 15, 2024                    By:   /s/ Kevin F. Dugan
                                                     Kevin F. Dugan, Esquire
                                                     NHBA No. 8535
                                                     1819 Elm Street
                                                     Manchester, NH 03014
                                                     (603) 627-1819
                                                     kdugan@arbd.com


DATED: October 15, 2024                    By:   /s/ Jared R. Green
                                                     Jared R. Green, Esquire
                                                     NHBA No. 10000
                                                     1819 Elm Street
                                                     Manchester, NH 03014
                                                     (603) 627-1819
                                                     jgreen@arbd.com


DATED: October 15, 2024                    By:   /s/ Nick E. Abramson
                                                     Nick E. Abramson, Esquire
                                                     NHBA No. 268560
                                                     1819 Elm Street
                                                     Manchester, NH 03014
                                                     (603) 627-1819
                                                     nabramson@arbd.com