UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Paul Stolzenburg, Executor of the Estate of Herman Stolzenburg and Executor of the Estate of Thelma Stolzenburg<br><br>v.<br><br>Flikr LLC, Amazon.com Services, LLC, and Vi-Jon, LLC | )<br>)<br>)<br>)<br>)   Docket No. 1: 24-cv-334-PB-TSM<br>)<br>)<br>)<br>)<br>)<br>) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **PLAINTIFF'S FIRST AMENDED COMPLAINT**

### **INTRODUCTION**

1.      The plaintiff brings this civil lawsuit against the defendants because his 93 year old parents were lit on fire, suffered horrifically for several days, and subsequently died, all because the designer and manufacturer of a table top fireplace device, and the sellers of the device, ignored the known risk of a fatal flame jetting incident presented by the device even after two nearly identical burn incidents led to lawsuits, the judges in both lawsuits found sufficient evidence to allow the jury to award punitive damages against the designer/manufacturer, two countries issued formal recalls of the device due to the very risk that occurred here, and an Amazon.com customer posted a public review drawing attention to the fire risk that ultimately occurred here. Moreover, the supplier of the bottle containing the fuel for the device sold the bottle without a simple safety precaution that likely would have prevented the entire incident.

1

**PARTIES**

2.      The plaintiff, Paul Stolzenburg, resides at 238 Beauty Hill Road in Barrington, New Hampshire 03825. He is the executor of the estate of his father, Herman Stolzenburg, and the executor of the estate of his mother, Thelma Stolzenburg.

3.      Defendant Flikr LLC is a business entity organized under the laws of the state of Georgia with a principal place of business at 233 Brickyard Road, Dalton, Georgia 30720.

4.      Defendant Amazon.com Services, LLC is a business entity organized under the laws of California with a principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109.

5.      Defendant Vi-Jon, LLC is a business entity organized under the laws of Delaware with a principal place of business at 8800 Page Avenue, St. Louis, Missouri 63114.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, since the plaintiff and the defendants are citizens of different states; the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), excluding interest and costs; and there is complete diversity of citizenship between the plaintiff and the defendants.

7.      This Court has personal jurisdiction over the defendants because the defendants purposely and intentionally conduct business in New Hampshire and their contacts with New Hampshire are connected to this

2

litigation, and because the defendants are subject to general jurisdiction due to the extent and nature of their contacts in the United States.

8.     Venue is proper in the District of New Hampshire based on 28 U.S.C. §1391(b)(2).

## FACTUAL BACKGROUND

9.     In 2010, Travis Seera decided to create a table top personal fireplace.   He had a bachelor's degree in liberal arts and no education, formal training, or experience in any scientific field pertaining to the design of such a device.

10.     In 2017, Travis Seera introduced for public sale a product he called "Burn," a small cement device that burned isopropyl alcohol to create a table top decorative fire.

11.     When the Burn device was introduced for sale to the public, Mr. Seera had not consulted with any experts or consultants to ensure that the device and its warnings and instructions were reasonably safe.

12.     Mr. Seera personally drafted the warnings and instructions that accompanied the Burn device.   When he did so, he had no education, training, or experience in the fields of engineering, fire safety, product safety, human factors, or product warnings/instructions.

13.     The warnings and instructions that Mr. Seera drafted, which accompanied the Burn device when it was sold to a customer, included the following statement:

> When fire is first lit the flame may be invisible. This effect of invisible flame also occurs when the fire is almost out. Do not refill fireplace until fire is absolutely out, even snuffing to ensure it's dead.

14. When he drafted the Burn device's warnings and instructions, Mr. Seera reviewed the warnings and instructions that accompanied other similar devices already in the marketplace and he copied the warning regarding invisible flames from another manufacturer's warnings and instructions.

15. In January of 2018, Mr. Seera created a business entity in Tennessee called Seera Creative LLC, which thereafter manufactured and sold the Burn device.

16. In early 2019, Mr. Seera decided that the name "Burn" was hindering sales so he "rebranded" the device by simply changing its name to "Flikr." No changes were made to the design of the device when the name changed to Flikr and it was thereafter manufactured and sold by Seera Creative LLC.

17. When he rebranded the device as Flikr, Mr. Seera personally revised the warnings and instructions that accompanied the device when it was sold to a customer.

18. The revised warnings and instructions that accompanied the Flikr device deleted the statement quoted above regarding the possibility of an invisible flame. Therefore, the initial version of the Flikr warnings and instructions did not advise users of the possibility of an invisible flame or flame jetting when using the Flikr device.

19. On June 8, 2019, a user of a Flikr device in Redondo Beach, California, Glynis Bogda, was badly burned when the device experienced a "sudden flash explosion" under expected use.

20. Nine days later, on June 27, 2019, a similar incident occurred in Oceanside, California, when Laura King was badly burned after a Flikr device "exploded" under expected use.

21. The warnings and instructions that accompanied the Flikr devices used by Ms. Bogda and Mrs. King had been revised again by Mr. Seera and they still did not mention the possibility or risk of an invisible flame.

22. On November 15, 2019, Laura King and her husband filed a civil lawsuit in California Superior Court against Seera Creative LLC, Travis Seera, and the retailer that sold the Flikr device alleging that the device was unreasonably dangerous and defective.

23. In 2020, sales of the Flikr device increased dramatically and it was eventually offered for sale through approximately 1,200 different retailers, including Amazon.com.

24. On November 10, 2020, Australia imposed a recall of the Flikr device. The public notice published by Australian authorities stated:

> The product does not comply with the requirements of the Consumer Goods (Decorative Alcohol Fuelled Devices) Safety Standard 2017.

25. The Australian recall notice also contained the following warning:

> **Hazard**: The flame from a decorative alcohol burner may not be visible when lit. If the user refills the burner while lit there is a risk of an uncontrolled flame burst causing serious burns.

5

26.    The Australian recall notice stated "Consumers must immediately cease use" of the Flikr fireplace and contact the seller to return the product and obtain a full refund.

27.    The Australian recall notice[1] and a separate recall advertisement[2] both remain posted on the Internet.

28.    On December 30, 2020, Ms. Bogda filed a civil lawsuit against Seera Creative LLC and the retailer that sold the device alleging that the Flikr Fireplace was unreasonably dangerous and defective.

29.    On October 27, 2021, an Amazon.com customer identified as "AF" posted a public review on Amazon.com's Flikr sales page which stated: "I wanted to love but too dangerous" and added, "In theory this thing is super cool.   But I found it to be too scary and dangerous with the flame following liquid and potential splashing, etc."

30.    On January 18, 2022, the then-president of Seera Creative LLC was deposed in the Laura King litigation and she testified that approximately 400,000 units of the Flikr fireplace had been sold and that Flikrs were being distributed at that point by approximately 1,200 different retailers.

31.    On July 8, 2022, the trial judge in the Laura King litigation issued an order stating, in part, as follows:

---

[1] https://www.productsafety.gov.au/recalls/flkr-mini-fireplace (visited on 11/12/2024)
[2] https://www.productsafety.gov.au/system/files/recall/Recall%20advertisement_1452.pdf (visited 11/12/2024).

> [T]he court finds, at a minimum, triable issues of material fact as to whether Defendant and/or Mr. [Travis] Seera acted with a willful and conscious disregard for the rights and safeties of consumers and/or intended to cause injury to consumers in allowing the FLIKR fireplace to go to market including: (1) whether Mr. Seera engaged in adequate evaluation/ testing/vetting of the FLIKR fireplace before bringing it to market; (2) why Defendant/Mr. Seera modified the instructions/warnings when they rebranded the FLIKR fireplace; and (3) whether and why Defendant/Mr. Seera did/did not obtain independent confirmation as to whether the updated instructions/warnings accompanying the FLIKR fireplace were sufficient for safety purposes.

32.    On October 18, 2022, a different judge presiding over the Glynis Bogda litigation denied the defendants' request to strike the plaintiff's claim for punitive damages (under California law) and denied the defendants' request to exclude from trial evidence of the Laura King incident, which the judge described as follows:

> Plaintiff further alleges that in an almost identical case, Laura King sustained serious burn injuries on June 27, 2019, when her FLIKR exploded after her husband Wade went to refill the fireplace with 70% isopropyl alcohol after a first burn appeared to have ended. Following the instructions, both Wade and Laura checked the fireplace for any lingering flame before attempting the refill. No flame was visible, and the burn chamber appeared to be dry. The cause of the explosion was an imperceptible flame that turned into a huge fireball as soon as Wade added the alcohol to the fireplace.

33.    The very next day, October 19, 2022, a new business entity named Flikr LLC was created in Georgia.  Travis Seera is not listed as an organizer of the new entity, but his brother Tyler, is listed as an organizer, albeit with an alternative spelling of his last name - Siira.

7

34.    Seera Creative LLC was dissolved as a business entity in Tennessee on December 2, 2022.

35.    In the meantime, on December 1, 2022, an Amazon.com customer identified as "ATXPrincey" posted a public review on Amazon.com's Flikr sales page which stated: "DO NOT USE THIS PRODUCT – FIRE HAZARD."   It then stated:   "To anyone considering using this product, be aware you may be injured or seriously burned. It was gifted to my wife and upon the attempt to light the device, a flash fire erupted that almost burned down my house and seriously burned two close friends who had to go to the ER. Save yourself from being a victim.   Tell your friends.   This product is a FIRE HAZARD."

36.    On September 28, 2023, Canada issued a recall of Flikr's round and square personal fireplaces.   The recall notice posted to the Internet[3] stated:

> The recalled products do not meet the labelling requirements for consumer container products sold with the intention of being filled with a hazardous chemical product, as required by the Consumer Chemicals and Containers Regulations, 2001, under the Canada Consumer Product Safety Act.

37.    According to the Canadian recall notice,

> The portable firepots also do not have the required labelling according to the ASTM F3363-19 Standard Specification for Unvented Liquid/Gel Fuel-Burning Portable Devices.   These labelling requirements are necessary to inform consumers about fire or burn hazards, including flame jetting.   Flame jetting occurs

---

[3] https://recalls-rappels.canada.ca/en/alert-recall/flikrfire-personal-firepots-recalled-due-lack-appropriate-labelling-and-hazard (visited on 11/12/2024).

> when fuel vapours around a poured fuel stream ignite
> when a user refuels a portable fire product that is still
> burning and a flame is not readily visible.   This can
> result in a burst of flaming fuel being rapidly expelled
> out of the container and travelling a distance dangerous
> to the user and bystanders. Flame jetting occurs very
> quickly, so the user and/or bystanders are unable to
> react quickly enough to move away from an incoming
> flame jet.

38.   The Canadian recall notice recounted that, "[a]s of September 22, 2023, the company has received 1 report of flame jetting in Canada resulting in burn injuries."   It expressly warned that:

> The lack of appropriate labelling and hazard information
> could contribute to a flame jetting incident and/or
> unintentional exposure to the produce and lead to
> serious illness, injury or death.

39.   Following the two California lawsuits and the two recalls, Travis Seera created a new set of warnings and instructions to accompany the Flikr Fire Personal Fireplace.   The new set of warnings and instructions still did not advise users of the possibility of an invisible flame or flame jetting when using the Flikr device.

40.   On April 7, 2024, Yvette Dexter ordered a Flikr Fire Personal Concrete Fireplace from Amazon.com.

41.   On April 12, 2024, the Flikr Fire Personal Fireplace ordered by Mrs. Dexter was shipped from Amazon.com for delivery to Mrs. Dexter's home in Winchester, Virginia.

42.     On April 13, 2024, the Flikr Fire Personal Fireplace ordered by Mrs. Dexter was delivered by Amazon.com to her residence in Winchester, Virginia.

43.     When the Dexters received the Flikr Fire Personal Fireplace from Amazon.com, the warnings and instructions that accompanied it did not advise users of the possibility of an invisible flame or flame jetting when using the Flikr device.

44.     On April 4, 2024, Yvette Dexter purchased a one gallon plastic bottle of Swan isopropyl alcohol from a hardware store in Purcellville, Virginia. Printed on the back of the plastic bottle was the number 0621364 and the expiration date of 2027/01/03.

45.     The bottle of Swan isopropyl alcohol purchased by Yvette Dexter on April 4, 2024 was sold and supplied by Vi-Jon, LLC.

46.     Yvette Dexter and her husband delivered the Flikr Fire Personal Fireplace and the bottle of Swan isopropyl alcohol to their friend, Diane McEneaney, at her residence at 8 Gold Post Road in Dover, New Hampshire on either April 25, 2024 or April 26, 2024.

47.     The Dexters presented the Flikr Fire Personal Fireplace and the bottle of Swan isopropyl alcohol to Ms. McEneaney as a gift.

48.     The Dexters, who owned a Flikr Fireplace of their own, showed Ms. McEneaney how to fill it with isopropyl alcohol, how to light it, and how to extinguish the flame.

49.     No warnings, instructions, or labels that accompanied the Flikr Fire Personal Fireplace or the bottle of Swan isopropyl alcohol that the Dexters gifted to Dee McEneaney on April 25, 2024 or April 26, 2024 advised users of the possibility of an invisible flame or flame jetting when using the Flikr device or the Swan isopropyl alcohol.

50.     After receiving the gift and after the Dexters returned to Virginia, Ms. McEneaney filled the Flikr fireplace with isopropyl alcohol from the bottle of Swan isopropyl alcohol, lit it, and extinguished it on many occasions without any problems, incidents, or concerns.

51.     On Father's Day, June 16, 2024, Ms. McEneaney invited her parents, Herman and Thelma Stolzenburg, to her home at 8 Gold Post Road in Dover, New Hampshire to celebrate the holiday.

52.     Thelma Pierce and Herman Stolzenburg had been born within two months of each other in 1931.   They met in their first grade classroom and were classmates through high school.   Both were members of the school band, Herman on drums and Thelma on the clarinet.   Herman played basketball and Thelma was a cheerleader.   They married in 1953 and had three children.

53.     Herman was drafted into the United States Navy, and ended up having a 21-year career, alternating stints as a submarine crewman and then a Navy recruiter.   In 1968, the family finally put down roots in Dover, New Hampshire.   Herman became Chief of the Boat aboard the USS Albacore, a submarine designed to dodge enemy warships, while Thelma worked as an

administrative assistant at the University of New Hampshire.

54.   By the 1990s, Herman had left the Navy and earned a college degree in business at the age of 56.   Then, both Herman and Thelma transitioned to a life of volunteer service with Thelma comforting seniors-in-need at a local assisted living facility while Herman crusaded for homeless dogs at the Cocheco Valley Humane Society.   His legendary contributions to the rescue center included roles as dog walker, food runner, foster parent, fundraiser, cruelty investigator/victim rescuer, board chairman, schoolroom storyteller, and adoptive parent to some of the shelter's most disadvantaged dogs.   In early 2024, at the age of 93, Herman was still making weekly trips to the Cocheco Valley shelter, reading stories to soothe the lonely dogs.

55.   Herman's volunteer work for his fellow human citizens is equally legendary, from city beautification projects to school reading programs to environmental campaigns. After the USS Albacore was decommissioned and put on display in Portsmouth, former Chief of the Boat Stolzenburg would give impromptu tours to visitors. And shortly after the September 11, 2001 attack in New York City, Herman traveled to ground zero with a therapy dog, providing comfort for first responders. For a period of time, he volunteered weekly at the Strafford County Correctional Facility, greeting families coming to visit their incarcerated loved ones.   These, among many other displays of Herman's generosity and sense of service, led to his selection in 2008 as Dover's Citizen

of the Year.

56.     Herman and Thelma had known each other for 88 years and been married for 71 years when they visited their daughter, Dee, on Father's Day of 2024.



**_Herman and Thelma Stolzenburg_**

57.     As Thelma, Herman, and Dee sat together on the outside porch of Dee's home, the Flikr Fire Fireplace was located on the small table between them.   Dee lit the device with a long handled lighter.

58.     After a period of time, the flame on the device appeared to extinguish on its own.   Dee looked down into the cylinder of the device and did not see any remaining flame.

59.    Dee was unaware of the possibility of an invisible flame or flame jetting with respect to her use of the Flikr Fire Personal Fireplace.

60.    Having confirmed to herself that there was no remaining flame, Dee retrieved the bottle of Swan isopropyl alcohol and began to pour fuel from the bottle into the cylinder of the Flikr Fireplace.

61.    As Dee poured isopropyl alcohol from the bottle of Swan isopropyl alcohol into the Flikr device, a massive flame erupted from the device and the bottle, enveloping both her parents as they sat at the table where the device was located.

62.    Both Herman and Thelma were immediately lit on fire from the flames that erupted from the Flikr device and the Swan isopropyl alcohol bottle.   Dee yelled for help and did her best to put out the flames that were burning her parents.

63.    A neighbor called 911 at 3:43 p.m. and reported the emergency. Other neighbors came to the location of the incident and rendered aid as best they could.   First responders eventually arrived and took Herman and Thelma to the hospital, where they were treated for extensive and severe burns.

64.    Thelma passed away from her burns on June 22, 2024 at Massachusetts General Hospital and Herman passed away on June 25, 2024 at a Dover hospice center from his burns.

65.     On July 24, 2024, the United States Consumer Product Safety Commission issued a 74 page Decision and Order in The Matter of Amazon.com, Inc., CPSC Docket No. 21-2.[4]   The U.S. CPSC rejected Amazon.com's contention that it is not a distributor of the products it sells though its website and instead concluded that:

> Amazon fit squarely within the definition of distributor in the [Consumer Product Safety Act] when it operated its Fulfilled by Amazon program . . .   The substantial record before us establishes Amazon's extensive control over these products, beginning with receipt of a Fulfilled by Amazon participant's products at an Amazon distribution center, and storage of this inventory until it is purchased by and shipped to a consumer.   Amazon's argument that it is merely a 'third-party logistics provider' misrepresents the far-reaching control Amazon exercises in its Fulfilled by Amazon program.

Decision and Order at 26-27.

66.     In support of its conclusion, the Commission noted that "some courts have found Amazon liable under state and common law strict product liability principles because of its Fulfilled by Amazon program activities." Id. at 31, fn. 26 (citations omitted).   Then, reviewing the evidentiary record, which included sworn admissions by Amazon executives, the Commission summarized the pertinent facts that supported its conclusion as follows:

---

[4] The plaintiff incorporates by reference the entire CPSC order, which is posted on the Internet at https://www.cpsc.gov/s3fs-public/pdfs/recall/lawsuits/abc/142%20-%20In%20the%20Matter%20of%20Amazon.com%20Inc.%20Decision%20and%20Order.pdf. (visited on 11/12/2024).   This includes the evidence detailed in the order, along with the Commission's factual findings, and conclusions of law.

> Amazon charges customers, processes their payments, and then pays program participants after deducting its own Fulfilled by Amazon program fees.   Amazon controls the entire sale process, from the initial listing on Amazon.com, through ordering and delivery, to product returns, disposition of returned products, and the processing of refunds or Amazon credits.

Id. at 35.

67.     On October 17, 2024, the United States Consumer Product Safety Commission published a recall notice pertaining to Colsen brand indoor/ outdoor tabletop fire pits, which are very similar to the Flikr device at issue in this case.

68.     The Colsen recall notice[5], published on the Commission's website, described the hazards presented by the devices as follows:

> Alcohol flames can be invisible and lead to flame jetting when refilling the fire pit reservoir. Flame jetting is a serious event that can occur while pouring alcohol, when fire flashes back to the alcohol container and suddenly propels burning alcohol out of the container and onto people nearby. Alcohol can also splash, spill or leak out of the fire pit reservoir during use, causing a flash fire that can spread and create larger hotter flames, that can escape the unit.   Use of the recalled fire pits can lead to injury quickly and unexpectedly, causing burns in less than one second, that can be serious and deadly.

69.     The Colsen recall notice further stated:

> CPSC has received 31 reports of flame jetting and flames escaping from the concrete container; resulting in 19 burn injuries. Two incidents resulted

---

[5] https://www.cpsc.gov/Recalls/2025/Colsen-Recalls-Fire-Pits-Due-to-Risk-of-Serious-Burn-Injury-from-Flame-Jetting-and-Fire-Spreading-Hazards (visited on 11/12/2024).

16

in third degree burns to more than 40% of victims' bodies, and at least six incidents have involved surgery, prolonged medical treatment, admission to burn treatment facilities, short-term disability, loss of function, physical therapy, or permanent disfigurement.

70. The Colsen recall notice directs possessors to "immediately stop using the recalled fire pits and dispose of them. **Do NOT resell or donate them.**" (Emphasis in original).

71. The Colsen recall notice states that the devices were sold to customers by various retailers, including Amazon.com, between January 2020 and July 2024, and that the manufacturer "stopped selling Colsen-branded fire pits less than one year after it acquired the product business and does not have the financial resources to offer a remedy to consumers."

72. On November 18, 2022, Amazon.com was sued in Illinois state court by Kalman and Rivka Benjamin, who alleged that they were injured on September 8, 2021 when a Colsen fire pit they purchased from Amazon.com was involved in a flame jetting incident while it was being fueled with 99% isopropyl alcohol from a one gallon container.

73. The allegations against Amazon.com in the Benjamins' lawsuit were that it sold two unreasonably dangerous products: the Colsen fire pit and the gallon container of isopropyl alcohol.

74. The Benjamins alleged that the Colsen fire pit Amazon.com sold them was unreasonably dangerous because: (a) it utilized an unsafe combustion source (the 99% isopropyl alcohol); (b) it lacked safety features to

17

prevent fire or explosion during fueling; and (c) it lacked adequate and proper instructions or warnings.

75.     The Benjamins further alleged that the isopropyl alcohol Amazon.com sold them was unreasonably dangerous because: (a) the container did not include a flame arrestor; (b) it was improperly sold as a fuel source for use in fire pits; and (c) it lacked adequate or proper instructions or warnings.

76.     The Benjamins' state court lawsuit against Amazon.com and others was removed to the United States District Court for the Northern District of Illinois Eastern Division where it was docketed as case number 1:22-cv-7127 and Amazon.com filed its Answer in that court on December 22, 2022.

77.     On February 23, 2023, Amazon.com was sued by Samantha Loving in the United States District Court for the Southern District of Texas Galveston Division.   Ms. Loving's lawsuit, which was docketed as case number 3:23-cv-58, arose from an fire incident on June 26, 2022 where she was severely burned while using a Colsen fire pit she had purchased through Amazon.com's website on April 24, 2022.

78.     In her complaint, Ms. Loving alleged that Amazon.com failed to exercise reasonable care by: (a) failing to properly vet the manufacturer of the Colsen fire pit; (b) failing to properly vet the Colsen fire pit itself; (c) exposing the plaintiff to a dangerous product by listing the Colsen fire pit on its website; (d) ignoring red flags raised by user reviews; and (e) failing to warn the plaintiff

about the dangerous latent condition of the Colsen or which Amazon was aware.

79.    Amazon.com filed its Answer to Ms. Loving's complaint on April 13, 2023, approximately one year before it sold the Flikr fire place to the Dexters through its website.

80.    On December 21, 2023, Canadian authorities issued a public advisory, posted on their website, warning consumers not to use isopropyl alcohol to fuel fire pots.[6]   The advisory told consumers: "Never fuel firepots with rubbing alcohol or other flammable liquids from a container that does not have a flame arrestor to help prevent the spread of flames."

81.    The Canadian advisory explained to consumers that "Health Canada is warning people not to fuel firepots with rubbing alcohol products (i.e., solutions of isopropyl alcohol or ethanol), even if instructions suggest it. This is a dangerous practice that can lead to serious fire and burn risks."

82.    The Canadian advisory declared that "[i]t is dangerous to use rubbing alcohol products as a fuel source for firepots because rubbing alcohol containers typically do not have a flame arrestor."

83.    According to the Canadian advisory,

> Flame jetting is when a fireball bursts from a container of fuel which can cause serious injuries, even death. This happens very quickly when a flammable liquid, from a container without a flame arrestor, is poured into a firepot that is still burning

---

[6]    **Error!**           **Main**           **Document Only.**https://recalls-rappels.canada.ca/en/alert-recall/health-canada-warns-against-using-rubbing-alcohol-products-fuel-firepots-can-result (visited 11/12/2024).

or hot. The flame can travel up the stream of the fuel and into the container. This can lead to a burst of flaming fuel jetting out of the container. The resulting flame jet poses a serious fire and burn risk to the user and anyone nearby.

84. The advisory stated that Canadian authorities had "notified firepot manufacturers of the serious risks involved with using rubbing alcohol products with portable firepots . . . [and] . . . requested that manufacturers remove any recommendations for rubbing alcohol as a fuel in their instructions or promotional materials."

85. The advisory stated that "[i]n 2019, Health Canada asked [the] industry to stop the sale of certain containers of pourable alcohol-based fuels and certain portable firepots that use pourable fuels as it was determined they pose a danger to human health or safety."

86. The advisory stated that Canada had established

mandatory requirements for containers of pourable alcohol-based fuels and portable firepots to help address the risk of flame jetting. A container of a pourable alcohol-based fuel supplied in Canada requires a permanent flame arrestor that meets specific performance criteria outlined in the safety standard ASTM F3429 / F3429M – 20, "*Standard Specification for Performance of Flame Mitigation Devices Installed in Disposable and Pre-Filled Flammable Liquid Containers*", or an equivalent standard.

87. Approximately four months after the Canadian advisory was published, Flikr and Amazon supplied the Flikr personal fireplace to the Dexters with instructions to use isopropyl alcohol as fuel and Vi-Jon supplied

the Swan isopropyl alcohol bottle to the Dexters without a flame arrestor, without any instructions not to use it as fuel for a personal fireplace, and without any warnings regarding flame jetting.

## COUNT I
### (Strict Liability - Flikr LLC)

88.   The plaintiff incorporates by reference each of the foregoing paragraphs.

89.   At all times relevant, defendant Flikr LLC was engaged in the business of designing, manufacturing, and selling Flikr Fire Fireplaces, including the one that caused the Stolzenburgs' burn injuries and subsequent deaths.

90.   Defendant Flikr LLC designed, manufactured, and sold the Flikr Fire Fireplace that caused the Stolzenburgs' injuries and deaths.

91.   The Flikr Fire Fireplace was sold in a defective and unreasonably dangerous condition in that it was capable of creating unexpected flame jetting likely to seriously harm a user or innocent bystander under foreseeable use.

92   Dee McEneaney and the Stolzenburgs were foreseeable users of the Flikr Fire Fireplace and the manner in which they used it was foreseeable to the defendant.

93.   As a direct and proximate result of the defective and unreasonably dangerous condition of the Flikr Fire Fireplace sold to the Dexters and gifted to Ms. McEneaney, the device unexpectedly created flame jetting which caused serious harm to the Stolzenburgs, and their subsequent deaths, under

foreseeable use.

94. As a further result, Mr. and Mrs. Stolzenburg suffered extreme physical pain and emotional distress, they experienced a loss of enjoyment of life, and they incurred extraordinary medical expenses and funeral costs.

95. Wherefore, the plaintiff demands judgment against Flikr LLC in an amount sufficient to compensate the Stolzenburgs' estates for the foregoing injuries and losses, together with interest and costs.

**COUNT II**
**(Negligence - Flikr LLC)**

96. The plaintiff incorporates by reference each of the foregoing paragraphs.

97. Flikr LLC had a duty to use reasonable care in designing and manufacturing the Flikr Fire Fireplace to avoid distributing and selling it in an unreasonably dangerous condition.

98. Flikr LLC breached this duty by selling the Flikr Fire Fireplace when it knew or should have known that it was in a defective and unreasonably dangerous condition in that it was capable of creating unexpected flame jetting likely to seriously harm a user or innocent bystander under foreseeable use, and when it otherwise failed to comply with the applicable standards for safe design, instructions, and warnings intended to prevent harm to those using the fireplace in a foreseeable manner.

99. Dee McEneaney and the Stolzenburgs were foreseeable users of the Flikr Fire Fireplace and the manner in which they used it was foreseeable to

the defendant.

100.   As a direct and proximate result of the defendant's breach, the Flikr Fireplace unexpectedly created flame jetting which caused serious harm to the Stolzenburgs, and their subsequent deaths, under foreseeable use.

101.   As a further result, Mr. and Mrs. Stolzenburg suffered extreme physical pain and emotional distress, they experienced a loss of enjoyment of life, and they incurred extraordinary medical expenses and funeral costs.

102.   Wherefore, the plaintiff demands judgment against Flikr LLC in an amount sufficient to compensate the Stolzenburgs' estates for the foregoing injuries and losses, together with interest and costs.

**COUNT III**
**(Strict Liability - Amazon.com Services, LLC)**

103.   The plaintiff incorporates by reference each of the foregoing paragraphs.

104.   At all times relevant, defendant Amazon.com Services, LLC was engaged in the business of selling and distributing Flikr Fire Fireplaces, including the one that caused the Stolzenburgs' injuries and deaths.

105.   Defendant Amazon.com Services, LLC sold and distributed the Flikr Fire6 Fireplace that caused the Stolzenburgs' injuries and deaths.

106.   The Flikr Fire Fireplace was sold in a defective and unreasonably dangerous condition in that it was capable of creating unexpected flame jetting likely to seriously harm a user or innocent bystander under foreseeable use.

107. Dee McEneaney and the Stolzenburgs were foreseeable users of the Flikr Fire Fireplace and the manner in which they used it was foreseeable to the defendant.

108. As a direct and proximate result of the defective and unreasonably dangerous condition of the Flikr Fire Fireplace sold to the Dexters and gifted to Ms. McEneaney, the device unexpectedly created flame jetting which caused serious harm to the Stolzenburgs, and their subsequent deaths, under foreseeable use.

109. As a further result, Mr. and Mrs. Stolzenburg suffered extreme physical pain and emotional distress, they experienced a loss of enjoyment of life, and they incurred extraordinary medical expenses and funeral costs.

110. Wherefore, the plaintiff demands judgment against Amazon.com Services, LLC in an amount sufficient to compensate the Stolzenburgs' estates for the foregoing injuries and losses, together with interest and costs.

## COUNT IV
### (Negligence - Amazon.com Services, LLC)

111. The plaintiff incorporates by reference each of the foregoing paragraphs.

112. Amazon.com Services, LLC had a duty to use reasonable care to avoid distributing and selling the Flikr Fire Fireplace in an unreasonably dangerous condition.

24

113.   Amazon.com Services, LLC breached this duty by selling or distributing the Flikr Fire Fireplace when it knew or should have known that it was in an unreasonably dangerous condition in that it was capable of creating unexpected flame jetting likely to seriously harm a user or innocent bystander under foreseeable use, and when it knew or should have known that the device failed to comply with the applicable standards for safe design, instructions, and warnings intended to prevent harm to those using the fireplace in a foreseeable manner.

114.   Dee McEneaney and the Stolzenburgs were foreseeable users of the Flikr Fire Fireplace and the manner in which they used it was foreseeable to the defendant.

115.   As a direct and proximate result of the defendant's breach, the Flikr Fireplace unexpectedly created flame jetting which caused serious harm to the Stolzenburgs, and their subsequent deaths, under foreseeable use.

116.   As a further result, Mr. and Mrs. Stolzenburg suffered extreme physical pain and emotional distress, they experienced a loss of enjoyment of life, and they incurred extraordinary medical expenses and funeral costs.

117.   Wherefore, the plaintiff demands judgment against Amazon.com Services, LLC in an amount sufficient to compensate the Stolzenburgs' estates for the foregoing injuries and losses, together with interest and costs.

## COUNT V
### (Strict Liability – Vi-Jon, LLC)

118.   The plaintiff incorporates by reference each of the foregoing paragraphs.

119.   At all times relevant, defendant Vi-Jon, LLC was engaged in the business of designing, manufacturing, selling, and distributing bottles of Swan isopropyl alcohol, including the one that was involved in the incident that caused the Stolzenburgs' burn injuries and subsequent deaths.

120.   Defendant Vi-Jon, LLC designed, manufactured, and sold the bottle of Swan isopropyl alcohol that contributed to cause the Stolzenburgs' injuries and deaths.

121.   The bottle of Swan isopropyl alcohol was sold in a defective and unreasonably dangerous condition in that it was not equipped with available flame mitigation measures and devices, which would not have significantly interfered with the intended function of the bottles or their appearance, and which are intended to prevent incidents of unexpected flame jetting, which were known to the defendants to occur, and which were likely to seriously harm a user or innocent bystander under foreseeable use. Nor was the bottle accompanied by warnings or instructions sufficient to advise a reasonable user of the dangers of flame jetting and/or any measures to reduce or eliminate the risk of flame jetting.

122    Dee McEneaney and the Stolzenburgs were foreseeable users of the bottle of Swan isopropyl alcohol and the manner in which they used it was foreseeable to the defendant.

123.    As a direct and proximate result of the defective and unreasonably dangerous condition of the bottle of Swan isopropyl alcohol sold to Yvette Dexter and gifted to Ms. McEneaney, an unexpected flame jetting incident occurred under foreseeable use which caused serious harm to the Stolzenburgs and their subsequent deaths.

124.    As a further result, Mr. and Mrs. Stolzenburg suffered extreme physical pain and emotional distress, they experienced a loss of enjoyment of life, and they incurred extraordinary medical expenses and funeral costs.

125.    Wherefore, the plaintiff demands judgment against Vi-Jon, LLC in an amount sufficient to compensate the Stolzenburgs' estates for the foregoing injuries and losses, together with interest and costs.

### COUNT VI
### (Negligence – Vi-Jon, LLC)

126.    The plaintiff incorporates by reference each of the foregoing paragraphs.

127.    Vi-Jon, LLC had a duty to use reasonable care in designing and manufacturing the bottle of Swan isopropyl alcohol to avoid distributing and selling it in an unreasonably dangerous condition.

128.   Vi-Jon, LLC breached this duty by selling the bottle of Swan isopropyl alcohol when it knew or should have known that it was in a defective and unreasonably dangerous condition in that it was (a) capable of creating unexpected flame jetting likely to seriously harm a user or innocent bystander under foreseeable use; (b) it was not equipped with available flame mitigation measures and devices, which would not have significantly interfered with the intended function of the bottles, and which are intended to prevent incidents of unexpected flame jetting, which were known to the defendants to occur, and which were likely to seriously harm a user or innocent bystander under foreseeable use; and (c) it otherwise failed to comply with the applicable standards for safe design, instructions, and warnings intended to prevent harm to those using the bottle in a foreseeable manner.

129.   Dee McEneaney and the Stolzenburgs were foreseeable users of the bottle of Swan isopropyl alcohol and the manner in which they used it was foreseeable to the defendant.

130.   As a direct and proximate result of the defendant's breach, an unexpected flame jetting incident occurred under foreseeable use which caused serious harm to the Stolzenburgs and their subsequent deaths.

131.   As a further result, Mr. and Mrs. Stolzenburg suffered extreme physical pain and emotional distress, they experienced a loss of enjoyment of life, and they incurred extraordinary medical expenses and funeral costs.

132. Wherefore, the plaintiff demands judgment against Vi-Jon, LLC in an amount sufficient to compensate the Stolzenburgs' estates for the foregoing injuries and losses, together with interest and costs.

## ADDITIONAL PRAYER FOR RELIEF

133. To the extent that the misconduct of any defendant rises to the level of wanton or reckless, the plaintiff seeks an award of enhanced compensatory damages for the added harm suffered by the plaintiff and the decedents, as well as attorneys' fees.

134. Evidence supporting a finding of wanton or reckless misconduct on the part of Flikr LLC includes the evidence relied upon by the California trial judges in the King and Bogda cases when they permitted the issue of punitive damages to go to the jury in each case and the fact that, when they sold and distributed the Flikr Fire Fireplace that caused the Stolzenburgs' death, Flikr LLC had actual knowledge of the risk of serious harm caused by invisible flames and flame jetting, it had actual knowledge that the Flikr device had caused serious burns to multiple users or bystanders due to flame jetting, and it had actual knowledge that the device had been recalled in Australia and Canada due to the danger of harm from invisible flames and flame jetting.

135. Evidence of Amazon.com's wanton or reckless misconduct includes the fact that it sold the Flikr device to the Dexters in April of 2024 despite: (a) two public lawsuits involving harm caused by a Flikr device; (b) two published

court orders permitting the issue of punitive damages to go to the jury in the *King* and *Bogda* cases; (c) two public Flikr recalls; (d) the December 1, 2022 review posted on Amazon.com's Flikr sales page; (e) two lawsuits filed against it for selling the virtually identical Colsen fire pit, which burned the Benjamins in Illinois and Ms. Loving in Texas; (f) the fact that the virtually identical Colsen devices were involved in dozens of flame jetting incidents resulting in at least 19 burn injuries during the period between January 2020 and July 2024; and (g) the fact that Canadian authorities had published a health advisory warning that it was unsafe to sell a personal fireplace that used isopropyl alcohol for fuel.

136.   This establishes that, when it sold or distributed the Flikr Fireplace to the Dexters, Amazon.com had actual knowledge of the risk of serious harm caused by invisible flames and flame jetting with respect to the Flikr device and the similar Colsen devices which used isopropyl alcohol as a fuel, it had actual knowledge that the Flikr device and the similar Colsen devices had caused serious burns to multiple users or bystanders due to flame jetting, and it had actual knowledge that the Flikr device had been recalled in Australia and Canada due to the danger of harm from invisible flames and flame jetting.

137.   Evidence of Vi-Jon, LLC's wanton or reckless misconduct includes its actual knowledge that isopropyl alcohol was being used as a fuel for devices like the Colsen fire pits and the Flikr personal fireplaces; the existence of

dozens of reports of flame jetting and serious injury involving the foreseeable use of isopropyl alcohol as fuel for such devices; the existence of simple, inexpensive flame arrestor devices that would not have interfered with the function or appearance of the bottles; the existence of ASTM standards and Consumer Product Safety Commission rules pertaining to the use of flame mitigation devices and flame arrestors to prevent such incidents; and the publication of the December 21, 2023 Canadian advisory.

## JURY TRIAL DEMAND

138.  The plaintiff hereby demands a jury trial on all of the foregoing counts.

Respectfully submitted:

Paul Stolzenburg, Executor of the Estate of Herman Stolzenburg and Executor of the Estate of Thelma Stolzenburg

By His Attorneys:

ABRAMSON, BROWN & DUGAN

DATED: November 20, 2024

By:___/s/ Jared R. Green_____
Jared R. Green, Esquire
NHBA No. 10000
1819 Elm Street
Manchester, NH 03014
(603) 627-1819
jgreen@arbd.com

31

## CERTIFICATE OF SERVICE

I hereby certify that on this date a copy of the foregoing was forwarded via the Court's electronic filing system to:

James Campbell, Esquire
Adam Larson, Esquire
Campbell, Conroy & O'Neil
20 City Square, Suite 300
Boston, Massachusetts 02129
jcampbell@campbell-trial-lawyers.com
alarson@campbell-trial-lawyers.com
Counsel for Amazon.com Services, LLC

In addition, even though they have not filed their appearance yet, a copy of this proposed amended complaint was forwarded today via email to:

Laurence Leavitt, Esquire
Charles Boyle, Esquire
McCoy, Leavitt & Lasky
202 U.S. Route 1, Suite 200
Falmouth, Maine 04105
lleavitt@mlllaw.com
cboyle@mlllaw.com
Counsel for Flikr LLC


DATED: November 20, 2024          By:___/s/ Jared R. Green_____
                                     Jared R. Green, Esquire